FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 2 7 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| ARcare, Inc., an Arkansas Corporation, on behalf of itself and all others similarly situated | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| Sage Payment Solutions, Inc. and Sage Software, Inc. | ) ) ) |
| Defendant. | ) ) ) |

No. 2:16 cv 079

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

## CLASS ACTION COMPLAINT

Plaintiff, ARcare, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated, brings this Complaint against Sage Payment Solutions, Inc. and Sage Software, Inc. ("Defendants") for violations of the federal Telephone Consumer Protection Act and the Arkansas Deceptive Trade Practices Act. Plaintiff seeks certification of its claims against Defendants as a class action. In support, Plaintiff states as follows:

### INTRODUCTION

1.      This case challenges Defendants' policies and practices of faxing unsolicited advertisements without providing an adequate opt-out notice as required by law.

2.      Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the fast-growing expansion of the telemarketing industry. As is pertinent here, the TCPA and its implementing regulations prohibit persons within the United States from sending advertisements via fax without including a detailed notice that allows recipients to expeditiously opt out of receiving future solicitations.

3.      Junk faxes disrupt recipients' peace, drain recipients' paper, ink, and toner, and cause recipients tangible damages. Junk faxes also cause recipients to waste valuable time retrieving and discerning the purpose of the faxes; prevent fax machines from receiving and

1

sending authorized faxes; and cause undue wear and tear on recipients' fax machines. Plaintiff offers pharmaceutical services and must use its fax machine to receive communications about patients. That purpose is impeded when Plaintiff's fax machine is invaded by junk faxes.

4.      The TCPA provides a private right of action and statutory damages of $500 per violation, which may be trebled when the violation is willing or knowing.

5.      On behalf of itself and all others similarly situated, Plaintiff brings this case under the TCPA to recover declaratory relief, damages for violations of the TCPA, and an injunction prohibiting Defendants from future TCPA violations.

6.      Plaintiff further brings this case under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, *et seq.*, to recover declaratory relief, actual damages, injunctive relief, and attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Defendant since at all relevant times Defendant has transacted business within the State of Arkansas through its sending of facsimiles to Arkansas residents. Defendant further receives revenue from business it transacts in Arkansas.

8.      This Court has subject-matter jurisdiction over Plaintiff's TCPA claim pursuant to 28 U.S.C. § 1331.

9.      This Court has supplemental jurisdiction over Plaintiff's ADTPA claim pursuant to 28 U.S.C. § 1367(a).

10.      Venue in this district is proper because this is the district in which Defendants reside.

**PARTIES**

11.     Plaintiff, ARcare is an Arkansas non-profit corporation located in Augusta, Arkansas.

12.     Defendant Sage Payment Solutions, Inc. is a company that provides credit and debit card processing for businesses. It has its principal place of business in Reston, Virginia, and is organized under the laws of Delaware. It is a subsidiary of Sage Software, Inc.

13.     Defendant Sage Software, Inc. is a company that provides small and midsized businesses with a variety of business management applications. It has its principal place of business in Irvine, California, and is organized under the laws of Virginia. It is the parent company of Sage Payment Solutions, Inc.

**FACTS**

14.     On March 18, 2016, Defendants sent an unsolicited advertisement to Plaintiff's ink-and-paper facsimile machine. The four page fax advertises Defendants' payment processing services. The fax informs the recipient of a "Limited time offer!" A copy of this facsimile is attached hereto and marked as Exhibit A.

15.     Exhibit A is an exemplary of the junk faxes Defendants send.

16.     On March 24, 2016, Defendants sent the same four page unsolicited advertisement to Plaintiff's ink-and-paper facsimile machine. A copy of this facsimile is attached hereto and marked as Exhibit B.

17.     Upon information and belief, Plaintiff has received multiple fax advertisements from Defendants similar to Exhibits A and B.

18.     Defendants did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine.

3

19.     Defendants' faxes do not contain opt-out notices that comply with the requirements of the TCPA.

## CLASS ALLEGATIONS

20.     In accordance with Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of the following class of persons (the "Class"):

> **All persons and entities who hold telephone numbers that received a facsimile transmission from Defendants at any time during the applicable statute of limitations to present (the "Class Period") that 1) promotes Defendants' products and 2) contains an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibits A and B to the Complaint.**

21.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is proper, as more information is gleaned in discovery.

22.     Excluded from the Class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of any such person. Also excluded are any judge who may preside over this case and any attorneys representing Plaintiff or the Class.

23.     Numerosity [Fed R. Civ. P. 23(a)(1)]. The Members of the Class are so numerous that joinder is impractical. Upon information and belief, Defendants have sent illegal fax advertisements to hundreds if not thousands of other recipients.

24.     Commonality [Fed. R. Civ. P. 23(a)(2)]. Common questions of law and fact apply to the claims of all Class Members and include (but are not limited to) the following:

> (a)   Whether Defendants sent faxes advertising the commercial availability of property, goods, or services;

(b)   The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibits A and B as well as other fax advertisements;

(c)   Whether Defendants faxed advertisements without first obtaining the recipient's prior express permission or invitation;

(d)   Whether Defendants' advertisements contained the opt-out notice required by law;

(e)   Whether Defendants sent the fax advertisements knowingly or willfully;

(f)   Whether Defendants violated 47 U.S.C. § 227;

(g)   Whether the Defendants' violation of the TCPA constituted an unfair practice in violation of ADTPA;

(h)   Whether Plaintiff and the other Class Members are entitled to actual and/or statutory damages;

(i)   Whether the Court should award treble damages; and

(j)   Whether Plaintiff and the other Class Members are entitled to declaratory, injunctive, and/or other equitable relief.

25.   Typicality [Fed. R. Civ. P. 23(a)(3)]. Plaintiff's claims are typical of the claims of all Class Members. Plaintiff received unsolicited fax advertisements without adequate opt out notices from Defendants during the Class Period. Plaintiff makes the same claims that it makes for the Class Members and seeks the same relief that it seeks for the Class Members. Defendants have acted in the same manner toward Plaintiff and all Class Members.

26.     <u>Fair and Adequate Representation [Fed. R. Civ. P. 23(a)(4)]</u>. Plaintiff will fairly and adequately represent and protect the interests of the Class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the Class.

27.     <u>Predominance and Superiority [Fed. R. Civ. P. 23(b)(3)]</u>. For the following reasons, common questions of law and fact predominate and a class action is superior to other methods of adjudication:

(a)     Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that Defendants may assert will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

(c)     Defendants have acted and continue to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d)     The amount likely to be recovered by individual Members of the Class does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based on common proofs;

(e)     This case is inherently well-suited to class treatment in that:

(i)     Defendants identified persons or entities to receive their fax transmissions, and it is believed that Defendants' computer and business records will enable Plaintiff to readily identify Class Members and establish liability and damages;

6

(ii)   Common proof can establish Defendants' liability and the damages owed to Plaintiff and the Class;

(iii)   Statutory damages are provided for in the statutes and are the same for all Class Members and can be calculated in the same or a similar manner;

(iv)   A class action will result in an orderly and expeditious administration of claims, and it will foster economies of time, effort, and expense;

(v)   A class action will contribute to uniformity of decisions concerning Defendants' practices; and

(vi)   As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## CLAIMS FOR RELIEF

### COUNT ONE
**Violations of the Telephone Consumer Protection Act**
*47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)*

28.   Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

29.   The TCPA provides strict liability for sending fax advertisements in a manner that does not comply with the statute. Recipients of fax advertisements have a private right of action to seek an injunction or damages for violations of the TCPA and its implementing regulations. 47 U.S.C. § 227(b)(3).

30.   The TCPA makes it unlawful to send any "unsolicited advertisement" via fax unless certain conditions are present. 47 U.S.C. § 227(b)(1)(C). "Unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property,

goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

31.     Unsolicited faxes are illegal if the sender and recipient do not have an "established business relationship." 47 U.S.C. § 227(b)(1)(C)(i). "Established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 U.S.C. § 227(a)(2); 47 C.F.R. § 64.1200(f)(6).

32.     Regardless of whether the sender and recipient have an established business relationship, and regardless of whether the fax is unsolicited, a faxed advertisement is illegal unless it includes an opt-out notice on its first page that complies with the TCPA's requirements. *See* 47 U.S.C. § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200(a)(4)(iv). To comply with the law, an opt-out notice must (1) inform the recipient that the recipient may opt out of receiving future faxes by contacting the sender; (2) provide both a domestic telephone number and a facsimile machine number—one of which must be cost-free—that the recipient may contact to opt out of future faxes; and (3) inform the recipient that the sender's failure to comply with an opt-out request within thirty days is a violation of law. *See* 47 U.S.C. § 227(b)(2)(D); 47 CFR § 64.1200(a)(4)(iii).

33.     Defendants faxed unsolicited advertisements to Plaintiff that did not have compliant opt-out notices, in violation of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

34.    Defendants knew or should have known (a) that Plaintiff had not given express invitation or permission for Defendants to fax advertisements about its products; (b) that Defendants' faxes did not contain a compliant opt-out notice; and (c) that Exhibits A and B are advertisements.

35.    Defendants' actions caused actual damage to Plaintiff and the Class Members. Defendants' junk faxes caused Plaintiff and the Class Members to lose paper, toner, and ink consumed in the printing of Defendants' faxes through Plaintiff's and the Class Members' fax machines. Defendants' faxes cost Plaintiff and the Class Members time that otherwise would have been spent on Plaintiff's and the Class Members' business activities.

36.    In addition to statutory damages (and the trebling thereof), Plaintiff and the Class are entitled to declaratory and injunctive relief under the TCPA.

## COUNT TWO
### Violations of the Arkansas Deceptive Trade Practices Act
*Ark. Code Ann. §§ 4-88-101, et seq.*

37.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

38.    Plaintiff, Members of the Sub-Class, and Defendants are persons within the meaning of Ark. Code Ann. § 4-88-102(5).

39.    Defendants' acts and practices—including, but not limited to, sending unsolicited fax advertisements to persons without adequate opt-out notices—amount to "[d]eceptive and unconscionable trade practices," as proscribed by Ark. Code Ann. § 4-88-107(a).

40.    The practices described herein also offend established public policy regarding the protection of the consuming public and legitimate business enterprises against companies, like Defendants, who engage in unfair methods of competition.

9

41.     Defendants' conduct, which caused substantial injury to Plaintiff and the Sub-Class could have been avoided, and is not outweighed by countervailing benefits to any consumers or competition.

42.     Plaintiff and Members of the Sub-Class suffered actual injury as the result of Defendants' acts, practices, and omissions.

43.     In addition to actual damages, Plaintiff and the Sub-Class are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to Ark. Code Ann. § 4-88-113(f).

## **REQUEST FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a)     Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b)     Declare Defendants' conduct to be unlawful under the TCPA and ADTPA;

c)     Award damages under the TCPA for each violation in the amount of actual monetary loss or $500, whichever is greater, and treble those damages;

d)     Award actual damages under the ADTPA;

e)     Enjoin Defendants from additional violations;

f)     Award Plaintiff and the Class their attorney's fees and costs;

g)     Grant such other legal and equitable relief as the Court may deem appropriate.

## **JURY DEMAND**

Plaintiff and the Members of the Class hereby request a trial by jury.

DATED: May 27, 2016

Respectfully submitted,

By: /s/ _Randall K. Pulliam_

Randall K. Pulliam, Esq.
rpulliam@cbplaw.com
Justin Craig, Esq.
jcraig@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
2800 Cantrell Rd., Suite 510
Little Rock, Arkansas 72202
Telephone:  (501) 312-8500
Facsimile:  (501) 312-8505

# EXHIBIT A

# Sage Payment Solutions
# Merchant Services

Tel: 888-446-6532  Fax: 888-428-4037 & 888-446-6532

| Wells Fargo Tower | 2030 Main Street, Ste 1300, Irvine, CA 92614 |

TO: **Tana/Arcare**
Fax. 8704422042

RE: **Your Merchant Account**

FROM: April Hartzell, Account Manager

DATE: 3/18/16

PAGES: 4

☒  URGENT  ☒  FOR REVIEW  ☒  PLEASE REPLY

We called your office earlier and wanted to follow up regarding
**LOWERING your merchant discount rate considerably for
Visa/MasterCard and Discover** (page 2 of the app.), please see attached
Merchant Services agreement (on Tsys platform).

- Next Day Deposit,

- NO cost to start this new program,
- NO monthly statement fee,

- NO downtime as we handle the transfer for you at no cost to you.

Limited time offer!

> Takes <u>5 minutes</u> to complete:
>
> ☑  page 1 of application: Complete where indicated by the arrows
> - **TAX ID** &
> - **OWNERSHIP** section (in the middle of pg 1 of 3)
> - **SIGN at bottom,**
>
> ☑  page 3: **sign** where indicated by the arrows (2 signatures total),
>
> ☑  Include **Voided Check** for your deposits to start SAVING.
>
> ☑  **FAX** to **888-428-4037** or try **888-446-6532** for a quick approval.

I wish you continued success and look forward to serving you in the years to come!

**To be removed** from our offer to LOWER your merchant cost, <u>write REMOVE at the top</u> and fax this back to **(888) 519-4214**

# Sage Payment Solutions

11129 SUNSET HILLS RD SUITE 400 AND 500, RESTON, VA 20190 – 5822

*Sage Payment Solutions is a registered ISO/MSP of BMO Harris Bank N.A. ®*

## APPLICATION FOR MERCHANT ACCOUNT AND AGREEMENT - BANKCARD

| REFERRAL | | LEAD SOURCE | |
|---|---|---|---|
| **SETTLEMENT BANK** BMO HARRIS BANK N.A. | | AUTHORIZATION NETWORK | SETTLEMENT NETWORK VITAL |
| **OFFICE NAME** Merchant Services | | OFFICE PHONE | APPLICATION ID |
| APPLICATION DATE | | CONTRACTOR NAME | ASSOCIATION |

### BUSINESS / TAX INFORMATION

| NAME (as it appears on your Federal Income Tax Return) | FEDERAL TAX ID (as it appears on your Federal Income Tax Return) |
|---|---|
| CLIENT'S LEGAL or CORPORATE NAME (must be used exactly as it appears on your IRS tax filing name) | CLIENT'S BUSINESS NAME (doing business as) |
| MAILING / BILLING ADDRESS | LOCATION ADDDRESS (if different than mailing address) |
| CITY, STATE, ZIP CODE (+4) | CITY, STATE, ZIP CODE (+4) |
| PRIMARY CONTACT NAME | PRIMARY CONTACT PHONE | LOCATION PHONE | LOCATION FAX |
| PRIMARY EMAIL ADDRESS | BUSINESS WEBSITE ADDRESS |
| DATE BUSINESS STARTED | LENGTH OF CURRENT OWNERSHIP | CUSTOMER SERVICE PHONE |
| D & B | EXISTING MID (if different than) | NUMBER OF LOCATIONS | STORE NUMBER |

☐ SOLE PROPRIETOR  ☐ C CORPORATION  ☐ S CORPORATION  ☐ PARTNERSHIP  ☐ NON-PROFIT  ☐ TRUST | ESTATE
☐ LLC SOLE PROPRIETOR  ☐ LLC C CORPORATION  ☐ LLC S CORPORATION  ☐ LLC PARTNERSHIP  ☐ NON-US ENTITY  STATE FILED: _____

☐ I CERTIFY THAT I AM A FOREIGN ENTITY / NON-RESIDENT ALIEN (if cross business, if filling the FORM 1099)

☒ I CERTIFY THAT I AM PROVIDING AUTHORIZATION FOR THE ELECTRONIC ISSUANCE OF IRS FORM 1099

FAILURE TO PROVIDE ACCURATE INFORMATION MAY RESULT IN A WITHHOLDING OF MERCHANT FUNDING PER IRS REGULATIONS (REFER TO SECTION 5.5.7 OF TERMS AND CONDITIONS)

### OWNER(S) / OFFICER(S)

| LAST NAME | FIRST NAME | MI | LAST NAME | FIRST NAME | MI |
|---|---|---|---|---|---|
| PERCENTAGE OF OWNERSHIP | DATE OF BIRTH | | PERCENTAGE OF OWNERSHIP | DATE OF BIRTH | |
| RESIDENTIAL ADDRESS | | | RESIDENTIAL ADDRESS | | |
| CITY, STATE & ZIP CODE | | | CITY, STATE & ZIP CODE | | |
| PHONE | SOCIAL SECURITY NUMBER (SSN) | | PHONE | SOCIAL SECURITY NUMBER (SSN) | |
| HAVE YOU EVER BEEN PLACED ON THE TERMINATED MERCHANT FILE? ☐ YES ☐ NO | | | LENGTH OF CURRENT OWNERSHIP | YRS OF EXPERIENCE IN RELATED FIELD | |

### AUTHORIZATION TO ACH

| BANK NAME | | CITY, STATE | | please attach a **VOIDED CHECK** |
|---|---|---|---|---|
| **DEPOSITORY:** | | ROUTING # | ACCOUNT # | |
| **FEES:** | | ROUTING # same | ACCOUNT #. same | |

### DISCLOSURE

| MEMBER BANK (ACQUIRER) INFORMATION | |
|---|---|
| ACQUIRER NAME | BMO Harris Bank N.A |
| ACQUIRER ADDRESS | 150 N. Martindale Rd Suite 900 |
| ACQUIRER CITY | Schaumburg |
| ACQUIRER STATE, ZIP | IL, 60173 |
| ACQUIRER PHONE | (847) 240-6600 |

**IMPORTANT MEMBER BANK (ACQUIRER) RESPONSIBILITIES**
1. A American Express® / Discover® / MasterCard® / Visa® Member is the only entity approved to extend acceptance of American Express / Discover® / MasterCard / Visa® products directly to a merchant.
2. A American Express® / Discover® / MasterCard® / Visa® Member must be a principal signatory to your Merchant Agreement.
3. The American Express / Discover / MasterCard / Visa® Member is responsible for educating Merchant on the pertinent American Express® / Discover® / MasterCard® / Visa® Operating Regulations with which the Merchant must comply.
4. This American Express® / Discover® / MasterCard® / Visa® Member is responsible for and must provide settlement funds to the merchant.
5. This American Express® / Discover® / MasterCard® / Visa® Member is responsible for all funds held in reserve that are derived from settlement.

**IMPORTANT MERCHANT RESPONSIBILITIES**
1. Ensure compliance with cardholder data security and storage requirements.
2. Maintain fraud and chargeback thresholds.
3. Review and understand the terms of the Merchant Agreement.
4. Comply with American Express® / Discover® / MasterCard® / Visa® Operating Regulations.

| MERCHANT INFORMATION | |
|---|---|
| MERCHANT NAME | |
| MERCHANT ADDRESS | |
| MERCHANT CITY | |
| MERCHANT STATE, ZIP | |
| MERCHANT PHONE | |

The above signer hereby certifies that he/she has received a copy of this Merchant Agreement, including all pertinent terms and conditions herein.

| MERCHANT PRINCIPAL | | | |
|---|---|---|---|
| **SIGNATURE** ☒ | **PRINTED NAME** | **TITLE** | **DATE** |

Application for Merchant Account - BANKCARD                     Page 4 of 5                                         REV 20150417

**PLEASE NOTE** The complete Merchant Agreement includes this application and the Terms and Conditions on the (8) additional pages.

 BMO Harris Bank

 sage

## UNDERWRITING PROFILE

| BUSINESS TYPE | | | | SEASONAL HIGH VOLUME MONTHS (CIRCLE ALL THAT APPLY) |
|---|---|---|---|---|
| ☐ INTERNET | ☐ MOTO | ☒ RETAIL | ☐ RESTAURANT | J  F  M  A  M  J  J  A  S  O  N  D |

| PRODUCTS or SERVICES SOLD | RETURN POLICY | DAYS UNTIL PRODUCT DELIVERY |
|---|---|---|

| MONTHLY VOLUME  $ | AVERAGE TICKET  $ | HIGHEST TICKET  $ | DISCOUNT PAID  ☐ DAILY  ☐ MONTHLY |
|---|---|---|---|

| CURRENT PROCESSOR | CURRENT PROCESSOR PHONE |
|---|---|

### METHOD OF SALES (100% MUST = 100%)

| CARD PRESENT SWIPED | CARD PRESENT IMPRINT | CARD NOT PRESENT |
|---|---|---|
| 90 % | 10 % | 0 % |

### % OF PRODUCTS SOLD (100% MUST = 100%)

| CONSUMER SALES | BUSINESS SALES | GOVERNMENT SALES |
|---|---|---|
| 90 % | 10 % | 0 % |

## BILLING QUESTIONNAIRE

PLEASE EXPLAIN YOUR BILLING/DELIVERY POLICY

☐ FULL PAYMENT UP FRONT WITH _____ DAYS UNTIL PRODUCT / SERVICE DELIVERY
☐ PARTIAL PAYMENT UP FRONT WITH ____ % AND WITHIN ____ DAYS UNTIL FINAL PRODUCT / SERVICE DELIVERY
☐ PAYMENT RECEIVED AFTER PRODUCT / SERVICE IS PROVIDED.

IF PRODUCT/SERVICE DELIVERY REQUIRES RECURRING BILLING, PLEASE EXPLAIN AVAILABLE BILLING OPTIONS

☐ MONTHLY    ☐ QUARTERLY    ☐ SEMI – ANNUALLY    ☐ ANNUALLY

IS ANY PART OF YOUR BUSINESS OUTSOURCED TO A THIRD-PARTY?

☐ YES    ☐ NO    IF YES, PLEASE EXPLAIN: _____

## CREDIT CARD INTERCHANGE

| CARD TYPE | DISC RATE | DISC ITEM | | COST PLUS RATE | TIERED RATE 2 | TIERED RATE 3 | TIERED INTL / NS | TIERED BUSINESS |
|---|---|---|---|---|---|---|---|---|
| ☒ VISA® CREDIT | 0.95% | $ 0.00 | ☒ PT | ☐ CP ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ |
| ☒ VISA® CHECK CARD | 0.95% | $ 0.00 | ☒ PT | ☐ CP ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ |
| ☒ MASTERCARD® CREDIT | 0.95% | $ 0.00 | ☒ PT | ☐ CP ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ |
| ☒ MASTERCARD® CHECK CARD | 0.95% | $ 0.00 | ☒ PT | ☐ CP ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ |
| ☒ DISCOVER® | 0.95% | $ 0.00 | ☒ PT | ☐ CP ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ |
| ☒ AMERICAN EXPRESS® CREDIT | ___ % | $ 0.00 | ☐ PT | ☐ CP ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ | ___ % + $ |
| ☒ PIN DEBIT | ___ % | $ 0.00 | ☐ PI | ☐ CP ___ % + $ | | | | |
| ☐ FANF CP / CNP (VARIES)* | | | | | | | | |

*FANF CP AND CNP FEES ARE BASED ON APPLICABLE MONTHLY RATES AND MAY INCLUDE A NUMBER OF LOCATIONS, PROCESSING, AND/OR VISA AND OTHER INFORMATION. PLEASE REFER TO FANF FOR ADDITIONAL INFORMATION AT WWW.MERCHANTNETWORKFEE.COM

☒ BY CHECKING THIS BOX MERCHANT OPTS OUT OF RECEIVING FUTURE COMMERCIAL MARKETING COMMUNICATIONS FROM AMERICAN EXPRESS®.

## OTHER ENTITLEMENTS

| CARD TYPE | REQUEST | EXISTING ACCOUNT |
|---|---|---|
| AMERICAN EXPRESS® | | |
| EBT FBS | | |

## PRICING INFORMATION

| AMOUNT | PER ITEM AUTHORIZATION | AMOUNT | RECURRING FEES |
|---|---|---|---|
| $ 0.10 | ☒ VISA® / MASTERCARD® | $ | ☐ MONTHLY STATEMENT |
| $ 0.02 | ☒ VISA® ACQUIRER PROCESSING FEE | $ | ☐ MONTHLY SUPPORT |
| $ 0.10 | ☒ VISA® DATA INTEGRITY FEE | $ 25.00 | ☒ MONTHLY MINIMUM |
| $ 0.02 | ☒ MASTERCARD® NETWORK ACCESS & BRAND USAGE | $ | ☐ MONTHLY GATEWAY ACCESS |
| $ | ☐ AMERICAN EXPRESS® | $ | ☐ MONTHLY DEBIT ACCESS |
| $ | ☐ DISCOVER® (JGB) | $ | ☐ MONTHLY WIRELESS ACCESS |
| $ 0.02 | ☒ DISCOVER® DATA USAGE FEE | $ | ☐ SAGE MOBILE MONTHLY ACCESS |
| $ | ☐ ARU | $ | ☐ SAGE MOBILE ADD'L MOBILE DEVICES (PER LINE) |
| $ | ☐ EBT | $ | ☐ ANNUAL ASSESSMENT |
| $ | ☐ PIN DEBIT PER ITEM | $ 25.00 | ☒ CHARGEBACK (PER OCCURRENCE) (if a disputed item) |
| $ 0.79 | ☒ VOICE AUTHORIZATION (over the phone authorization) | $ | ☐ CHARGEBACK ASSISTANCE PROGRAM |
| $ | ☐ ACCOUNT UPDATER | $ 2.50 | ☒ MSP NETWORK FEE |
| $ 0.035 | ☒ ADDRESS VERIFICATION SYSTEM (AVS) (VISA / MC ONLY) | $ | ☐ |

| AMOUNT | START UP PRICING | | |
|---|---|---|---|
| $ | ☐ ACCOUNT UPDATER ENROLLMENT FEE | 0.130 % | ☒ ASSESSMENTS | VISA® | CREDIT CARD TRANSACTIONS |
| $ | ☐ APPLICATION CREDIT | 0.110 % | ☒ ASSESSMENTS | VISA® | CHECK CARD TRANSACTIONS |
| $ | ☐ EQUIPMENT | 0.120 % | ☒ ASSESSMENTS | MASTERCARD® |
| $ | ☐ SAGE MOBILE SETUP FEE (ONE TIME FEE) | 0.130 % | ☒ ASSESSMENTS | MASTERCARD® | LARGE TICKET ($1K & +) |
| $ | ☐ SAGE MONTHLY SETUP PER ADD'L DEVICE (ONE TIME FEE) | 0.105 % | ☒ ASSESSMENTS | DISCOVER® |
| $ | ☐ TELE TRAINING – PHYSICAL | 0.010 % | ☒ MASTERCARD® DIGITAL ENABLEMENT FEE |
| $ | ☐ TELETRAINING – VIRTUAL | 0.150 % | ☒ AMERICAN EXPRESS® NETWORK FEE |
| $ | ☐ WIRELESS SETUP | 0.350 % | ☒ AMERICAN EXPRESS® NON – SWIPED / DIGITAL WALLET FEE |

PLEASE NOTE: The Complete Merchant Agreement includes this application and the Terms and Conditions, consisting of additional pages.



## TERMINAL HARDWARE / SOFTWARE

| TERMINAL / SOFTWARE TYPE (1) | | TERMINAL / SOFTWARE TYPE (2) | |
|---|---|---|---|
| TYPE | QUANTITY  1 | TYPE | QUANTITY |
| PART CONDITION □ NEW    □ REFURBISHED    ☒ EXISTING | | PART CONDITION □ NEW    □ REFURBISHED    □ EXISTING | |

| TERMINAL APPLICATIONS (1) | | | TERMINAL APPLICATIONS (2) | | |
|---|---|---|---|---|---|
| ☒ Retail    □ Supermarket    □ Hotel    □ AVS    □ Restaurant | | | □ Retail    □ Supermarket    □ Hotel    □ AVS    ☒ Restaurant | | |
| □ Server    □ Tips    □ Invoice #    □ MOTO (Card Not Present) | | | □ Server    □ Tips    □ Invoice #    □ MOTO (Card Not Present) | | |
| □ Purchase Card    ☒ Auto Close: | | | □ Purchase Card    □ Auto Close | | |

| TERMINAL PROGRAMS (1) | | TERMINAL PROGRAMS (2) | |
|---|---|---|---|
| VISANET ☒ TERM | PAYMENTECH □ TERM    □ HOST | VISANET □ TERM | PAYMENTECH □ TERM    □ HOST |
| PROVIDER ☒ MERCHANT    □ ISO    □ SAGE | | PROVIDER □ MERCHANT    □ ISO    □ SAGE | |
| □ AMEX / PIP (required Payment... x-Amex software additional paperwork required.) | | □ AMEX / PIP (required Payment... x-Amex software additional paperwork required.) | |
| □ CVV | | ☒ CVV | |
| □ NXT (Paymentech Only) add'l paperwork required | | □ NXT (Paymentech Only) add'l paperwork required | |
| | | ☒ Split Dial (visanet only) | |

| PRINTER (1) | | PRINTER (2) | |
|---|---|---|---|
| TYPE | QUANTITY | TYPE | QUANTITY |
| PART CONDITION □ NEW    □ REFURBISHED    □ EXISTING | | PART CONDITION □ NEW    □ REFURBISHED    □ EXISTING | |
| PROVIDER □ MERCHANT    □ ISO    □ SAGE | | PROVIDER □ MERCHANT    □ ISO    □ SAGE | |

| PINPAD (1) | | PINPAD (2) | |
|---|---|---|---|
| TYPE | QUANTITY | TYPE | QUANTITY |
| PART CONDITION □ NEW    □ REFURBISHED    □ EXISTING | | PART CONDITION □ NEW    □ REFURBISHED    □ EXISTING | |
| PROVIDER □ MERCHANT    □ ISO    □ SAGE | | PROVIDER □ MERCHANT    □ ISO    □ SAGE | |

## CERTIFICATION AND AGREEMENT

By signing below, the Merchant named: (1) certifies to Sage Payment Solutions that he/she is authorized to sign the Agreement, (2) certifies that all information and documents submitted in connection with this Application are true and complete (3) authorizes Bank or its agent to verify any of the information given, including credit references, and to obtain credit reports (including a spouse if in a community property state), (4) has read, agreed to, and acknowledges receipt of this terms and conditions of the Merchant Processing Agreement, attached hereto and incorporated herein by reference. The terms and conditions and this Application constitute the entire Integrated Merchant Processing Agreement by and between Merchant, Sage Payment Solutions and Bank; (5) agrees that Merchant and each transaction submitted to Bank will be bound by the Agreement in its entirety, and (6) agrees that Merchant will submit transactions to Bank only in accordance with the information in this Application and will immediately inform Sage Payment Solutions, in writing at the address above if any information in this Application changes. This Agreement will become effective only when signed by Bank and Sage Payment Solutions. Merchant further acknowledges that, as used in this paragraph, 'Bank' means the banking institution identified at the top of the first page of this Application and the same as the Settlement Bank.

By signing below, I represent that the information I have provided on the Application is complete and accurate and I authorize American Express Travel Related Services Company, Inc (American Express) to verify the information on the Application and to resolve and exchange information about me including, requesting reports from consumer reporting agencies. If I ask American Express whether or not a consumer report was requested, American Express will tell me, and if American Express received a report, American Express will give me the name and address of the agency that furnished it. I understand that upon American Express' approval of the business entity indicated above to accept the American Express Card, the Terms and Conditions for American Express Card Acceptance (Terms and Conditions) will be sent to such business entity along with a Welcome Letter. By accepting the American Express card for the purchase of goods and/or services, you agree to be bound by the Terms and Conditions

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of this day, _____

| MERCHANT PRINCIPAL or CORPORATE OFFICER (1) | | | |
|---|---|---|---|
| SIGNATURE  X | PRINTED NAME | TITLE | DATE |

| MERCHANT PRINCIPAL or CORPORATE OFFICER (2) | | | |
|---|---|---|---|
| SIGNATURE  X | PRINTED NAME | TITLE | DATE |

| SAGE PAYMENT SOLUTIONS | | | |
|---|---|---|---|
| SIGNATURE  X | PRINTED NAME | TITLE | DATE |

## PERSONAL GUARANTY

In consideration of Bank and Sage Payment Solutions' acceptance of the Agreement, the undersigned Guarantor jointly and severally if more than one- unconditionally guarantees the performance of all obligations of Merchant to Bank and Sage Payment Solutions under the Agreement, and payment of all sums due thereunder, and in the event of default, hereby waives notice of default and agrees to indemnify Bank and Sage Payment Solutions for all funds due from Merchant pursuant to the terms of this Agreement. This is a guaranty of payment and performance and not of collection, and in no case will Sage Payment Solutions be required to attempt collection from Company or pursue any other remedy or action before collection from Guarantor. Guarantor waives any and all rights of subrogation, reimbursement or indemnity derived from Merchant and all other rights and defenses available to Guarantor under applicable law, including California Civil Code Sections 2787 to 2856, inclusive (or any similar surety ship laws), and further waives any and all rights, defenses or notices arising by reason of any modification or change in the terms of this Agreement whatsoever including, without limitation, the renewal, extension, acceleration, or other change in the time and payment or other performance thereunder is due, and if any change in any interest or discount rate or fee thereunder. Guarantor confirms that Guarantor, individually or individually, is an officer or shareholder to the Merchant and party to the Agreement, and unconditionally and specifically authorizes Bank, or its authorized agent, to debit any overdue fees, costs, chargebacks, fines, penalties, expenses or obligations under the Agreement and for any contractual relationship with Bank or Sage Payment Solutions from any personal checking account or other account owned or controlled by Guarantor, and further to report any default hereunder on Guarantor's personal Credit Bureau Report. Guarantor agrees to pay all costs and expenses of whatever nature, including attorneys' fees and other legal expenses, incurred by or on behalf of Bank or Sage Payment Solutions in connection with the enforcement of this Guaranty. Guarantor further acknowledges that, as used in this paragraph, 'Bank' means the banking institution indicated by appropriate mark in one of the check boxes located at the top of the first page of this document.

| MERCHANT PRINCIPAL or CORPORATE OFFICER | | | |
|---|---|---|---|
| SIGNATURE  X | PRINTED NAME | TITLE | DATE |

| MERCHANT PRINCIPAL or CORPORATE OFFICER | | | |
|---|---|---|---|
| SIGNATURE  X | PRINTED NAME | TITLE | DATE |

## SITE INSPECTION INFORMATION

I have personally conducted a site inspection for this merchant, specially inspected the merchant's inventory, (if applicable) and represent the information on the merchant application is accurate and reliable.

| LOCATION TYPE □ RETAIL STORE    ☒ OFFICE    □ INDUSTRIAL    □ RESIDENCE    □ TRADE    □ OTHER | MERCHANT □ OWNS □ LEASE |
|---|---|

| SALES REPRESENTATIVE | | | |
|---|---|---|---|
| SIGNATURE | PRINTED NAME | TITLE | DATE |

**PLEASE NOTE:** The complete Merchant Agreement includes this application and the Terms and Conditions on nine (9) additional pages.

sage

# EXHIBIT B

# Sage Payment Solutions
# Merchant Services

Tel· 888-446-6532  Fax: 888-428-4037 & 888-446-6532

| Wells Fargo Tower | 2030 Main Street, Ste 1300, Irvine, CA 92614 |

TO: **Jessica/Arcare**

Fax: 8707315431

RE: **Your Merchant Account**

FROM: April Hartzell, Account Manager

DATE· **3/24/16**

PAGES. 4

☒  URGENT  ☒  FOR REVIEW  ☒  PLEASE REPLY

We called your office earlier and wanted to follow up regarding
## LOWERING your merchant discount rate considerably for
## Visa/MasterCard and Discover (page 2 of the app.), please see attached
Merchant Services agreement (on Tsys platform).

- Next Day Deposit,
- NO cost to start this new program,
- NO monthly statement fee,

- NO downtime as we handle the transfer for you at no cost to you.

Limited time offer!

---

Takes <u>5 minutes</u> to complete:

☑  page 1 of application: Complete where indicated by the arrows
- **TAX ID** &
- **OWNERSHIP** section (in the middle of pg 1 of 3)
- **SIGN at bottom,**

☑  page 3: **sign** where indicated by the arrows (2 signatures total),

☑  Include **Voided Check** for your deposits to start SAVING.

☑  **FAX** to **888-428-4037** or try **888-446-6532** for a quick approval.

---

I wish you continued success and look forward to serving you in the years to come!

**To be removed** from our offer to LOWER your merchant cost, <u>write REMOVE at the top</u> and fax this back to **(888) 519-4214**

# Sage Payment Solutions

11130 SUNSET HILLS RD SUITE 400 AND 500, RESTON, VA 20190 - 5820

*Sage Payment Solutions is a registered ISO/MSP of BMO Harris Bank N.A. ®*

## APPLICATION FOR MERCHANT ACCOUNT AND AGREEMENT - BANKCARD

| REFERRAL | | LEAD SOURCE | |
|---|---|---|---|

| SETTLEMENT BANK **BMO HARRIS BANK N.A.** | AUTHORIZATION NETWORK | SETTLEMENT NETWORK **VITAL** |
|---|---|---|
| OFFICE NAME **Merchant Services** | OFFICE PHONE | APPLICATION ID |
| APPLICATION DATE | CONTRACTOR NAME | ASSOCIATION |

### BUSINESS / TAX INFORMATION

| NAME (as it appears on your Federal Income Tax Return) | FEDERAL TAX ID (as it appears on your Federal Income Tax Return) |
|---|---|
| CLIENT'S LEGAL or CORPORATE NAME | CLIENT'S BUSINESS NAME |
| MAILING / BILLING ADDRESS | LOCATION ADDRESS |
| CITY, STATE, ZIP CODE (+4) | CITY, STATE, ZIP CODE (+4) |
| PRIMARY CONTACT NAME / PRIMARY CONTACT PHONE | LOCATION PHONE / LOCATION FAX |
| PRIMARY EMAIL ADDRESS | BUSINESS WEBSITE ADDRESS |
| DATE BUSINESS STARTED / LENGTH OF CURRENT OWNERSHIP | CUSTOMER SERVICE PHONE |
| D/B/A / EXISTING MID # | NUMBER OF LOCATIONS / STORE NUMBER |

☐ SOLE PROPRIETOR ☐ C. CORPORATION ☐ S CORPORATION ☐ PARTNERSHIP ☐ NON-PROFIT ☐ TRUST | ESTATE
☐ LLC SOLE PROPRIETOR ☐ LLC C CORPORATION ☐ LLC S CORPORATION ☐ LLC PARTNERSHIP ☐ NON-US ENTITY     STATE FILED ___
☐ I CERTIFY THAT I AM A FOREIGN ENTITY / NON-RESIDENT ALIEN
☒ I CERTIFY THAT I AM PROVIDING AUTHORIZATION FOR THE ELECTRONIC ISSUANCE OF IRS FORM 1099

### OWNER(S) / OFFICER(S)

| LAST NAME | FIRST NAME | M.I. | LAST NAME | FIRST NAME | M.I. |
|---|---|---|---|---|---|
| PERCENTAGE OF OWNERSHIP | DATE OF BIRTH | | PERCENTAGE OF OWNERSHIP | DATE OF BIRTH | |
| RESIDENTIAL ADDRESS | | | RESIDENTIAL ADDRESS | | |
| CITY, STATE & ZIP CODE | | | CITY, STATE & ZIP CODE | | |
| PHONE | SOCIAL SECURITY NUMBER (SSN) | | PHONE | SOCIAL SECURITY NUMBER (SSN) | |
| HAVE YOU EVER BEEN PLACED ON THE TERMINATED MERCHANT FILE? ☐ YES ☐ NO | | | LENGTH OF CURRENT OWNERSHIP | YRS OF EXPERIENCE IN RELATED FIELD | |

### AUTHORIZATION TO ACH                    please attach a VOIDED CHECK

| BANK NAME | CITY / STATE | |
|---|---|---|
| DEPOSITORY: | ROUTING # | ACCOUNT # |
| FEES: | ROUTING # **same** | ACCOUNT #. **same** |

### DISCLOSURE

| MEMBER BANK (ACQUIRER) INFORMATION | |
|---|---|
| ACQUIRER NAME | BMO Harris Bank N.A |
| ACQUIRER ADDRESS | 150 N. Martindale Rd Suite 900 |
| ACQUIRER CITY | Schaumburg |
| ACQUIRER STATE, ZIP | IL, 60173 |
| ACQUIRER PHONE | (847) 240-6600 |

**IMPORTANT MEMBER BANK (ACQUIRER) RESPONSIBILITIES**
1. A American Express® / Discover® / MasterCard® / Visa® Member is the only entity approved to extend acceptance of American Express® / Discover® / MasterCard® / Visa® products directly to a merchant.
2. A American Express® / Discover® / MasterCard® / Visa® Member must be a principal (signer) to your Merchant Agreement.
3. The American Express® / Discover® / MasterCard® / Visa® Member is responsible for educating Merchant in the pertinent American Express® / Discover® / MasterCard® / Visa® Operating Regulations with which the Merchant must comply.
4. The American Express® / Discover® / MasterCard® / Visa® Member is responsible for and must provide settlement funds to the Merchant.
5. The American Express® / Discover® / MasterCard® / Visa® Member is responsible for all funds held in reserve that are derived from settlement.

| MERCHANT INFORMATION |
|---|
| MERCHANT NAME |
| MERCHANT ADDRESS |
| MERCHANT CITY |
| MERCHANT STATE ZIP |
| MERCHANT PHONE |

**IMPORTANT MERCHANT RESPONSIBILITIES**
1. Ensure compliance with card-brand data security and storage requirements.
2. Maintain fraud and chargeback thresholds.
3. Review and Understand the terms of the Merchant Agreement.
4. Comply with American Express® / Discover® / MasterCard® / Visa® *Operating Regulations.*

| MERCHANT PRINCIPAL | | | |
|---|---|---|---|
| SIGNATURE | PRINTED NAME | TITLE | DATE |
| X | | | |

application for Merchant Account - BANKCARD     Page 1 of 3     REV 20160417

**PLEASE NOTE:** The complete Merchant Agreement includes this application and the Terms and Conditions on the following additional pages.

 BMO Harris Bank

 sage

## UNDERWRITING PROFILE

**BUSINESS TYPE**
☐ INTERNET  ☐ MOTO  ☒ RETAIL  ☐ RESTAURANT

PRODUCTS or SERVICES SOLD

**SEASONAL HIGH VOLUME MONTHS** (check all that apply)
J  F  M  A  M  J  J  A  S  O  N  D

RETURN POLICY                    DAYS UNTIL PRODUCT DELIVERY

| MONTHLY VOLUME $ | | AVERAGE TICKET $ | | HIGHEST TICKET $ | | DISCOUNT PAID ☐ DAILY ☐ MONTHLY |
| CURRENT PROCESSOR: | | | | CURRENT PROCESSOR PHONE | | |

### METHOD OF SALES (each must = 100%)

| CARD PRESENT SWIPED | CARD PRESENT IMPRINT | CARD NOT PRESENT |
|---|---|---|
| 90 % | 10 % | 0 % |

### % OF PRODUCTS SOLD (total must = 100%)

| CONSUMER SALES | BUSINESS SALES | GOVERNMENT SALES |
|---|---|---|
| 90 % | 10 % | 0 % |

## BILLING QUESTIONNAIRE

PLEASE EXPLAIN YOUR BILLING / DELIVERY POLICY

☐ FULL PAYMENT UP FRONT WITH _____ DAYS UNTIL PRODUCT / SERVICE DELIVERY

☐ PARTIAL PAYMENT UP FRONT WITH _____ % AND WITH IN _____ DAYS UNTIL FINAL PRODUCT / SERVICE DELIVERY.

☐ PAYMENT RECEIVED AFTER PRODUCT / SERVICE IS PROVIDED

IF PRODUCT / SERVICE DELIVERY REQUIRES RECURRING BILLING, PLEASE EXPLAIN AVAILABLE BILLING OPTIONS

☐ MONTHLY  ☐ QUARTERLY  ☐ SEMI – ANNUALLY  ☐ ANNUALLY

IS ANY PART OF YOUR BUSINESS OUTSOURCED TO A THIRD PARTY?

☐ YES  ☐ NO    IF YES, PLEASE EXPLAIN:

## CREDIT CARD INTERCHANGE

| CARD TYPE | DISC RATE | DISC ITEM | | COST PLUS RATE | TIERED RATE 1 | TIERED RATE 2 | TIERED INT \'NS | TIERED BUSINESS |
|---|---|---|---|---|---|---|---|---|
| ☒ VISA® CREDIT | 0.95 % | $ 0.00 | ☒ PT ☐ CP | % + $ | % + $ | % + $ | % + $ | % + $ |
| ☒ VISA® CHECK CARD | 0.95 % | $ 0.00 | ☒ PT ☐ CP | % + $ | % + $ | % + $ | % + $ | % + $ |
| ☒ MASTERCARD® CREDIT | 0.95 % | $ 0.00 | ☒ PT ☐ CP | % + $ | % + $ | % + $ | % + $ | % + $ |
| ☒ MASTERCARD® CHECK CARD | 0.95 % | $ 0.00 | ☒ PT ☐ CP | % + $ | % + $ | % + $ | % + $ | % + $ |
| ☒ DISCOVER® | 0.95 % | $ 0.00 | ☒ PT ☐ CP | % + $ | % + $ | % + $ | % + $ | % + $ |
| ☐ AMERICAN EXPRESS® CREDIT | % | | ☐ PT ☐ CP | % + $ | % + $ | % + $ | % + $ | % + $ |
| ☒ PIN DEBIT | % | $ 0.00 | ☐ PT ☐ CP | % + $ | | | | |
| ☐ FANF CP / CNP (VARIES) | | | | | | | | |

## OTHER ENTITLEMENTS

| CARD TYPE | REQUEST | EXISTING ACCOUNT |
|---|---|---|
| AMERICAN EXPRESS® | | |
| EBT FBS | | |

## PRICING INFORMATION

| AMOUNT | PER ITEM AUTHORIZATION | | AMOUNT | RECURRING FEES |
|---|---|---|---|---|
| $ 0.10 | ☒ VISA® / MASTERCARD® | | $ | ☐ MONTHLY STATEMENT |
| $ 0.02 | ☒ VISA® AQUIRER PROCESSING FEE | | $ | ☐ MONTHLY SUPPORT |
| $ 0.10 | ☒ VISA® DATA INTEGRITY FEE | | $ 25.00 | ☐ MONTHLY MINIMUM |
| $ 0.02 | ☒ MASTERCARD® NETWORK ACCESS & BRAND USAGE | | $ | ☐ MONTHLY GATEWAY ACCESS |
| $ | ☐ AMERICAN EXPRESS® | | $ | ☐ MONTHLY DEBIT ACCESS |
| $ | ☐ DISCOVER® (JCB) | | $ | ☐ MONTHLY WIRELESS ACCESS |
| $ 0.02 | ☒ DISCOVER® DATA USAGE FEE | | $ | ☐ SAGE MOBILE MONTHLY ACCESS |
| $ | ☐ ARU | | $ | ☐ SAGE MONTHLY ADD'L MOBILE DEVICES (PER DEV) |
| $ | ☐ EBT | | $ | ☐ ANNUAL ASSESSMENT |
| $ | ☐ PIN DEBIT PER ITEM | | $ 25.00 | ☐ CHARGEBACK (PER OCCURRENCE) (if a disputed item) |
| $ 0.79 | ☒ VOICE AUTHORIZATION (over the phone authorization) | | $ | ☐ CHARGEBACK ASSISTANCE PROGRAM |
| $ | ☐ ACCOUNT UPDATER | | $ 2.50 | ☒ MSP NETWORK FEE |
| $ 0.035 | ☒ ADDRESS VERIFICATION SYSTEM (AVS) (VISA / DISC ONLY) | | $ | ☐ |
| $ | ☐ | | $ | ☐ |

| AMOUNT | SET UP PRICING | | | |
|---|---|---|---|---|
| $ | ☐ ACCOUNT UPDATER ENROLLMENT FEE | | 0.130 % | ☒ ASSESSMENTS | VISA® | CREDIT CARD TRANSACTIONS |
| $ | ☐ APPLICATION CREDIT | | 0.110 % | ☒ ASSESSMENTS | VISA® | CHECK CARD TRANSACTIONS |
| $ | ☐ EQUIPMENT | | 0.120 % | ☒ ASSESSMENTS | MASTERCARD® |
| $ | ☐ SAGE MOBILE SETUP FEE (ONE-TIME FEE) | | 0.130 % | ☒ ASSESSMENTS | MASTERCARD® | LARGE TICKET (TIER 3) |
| $ | ☐ SAGE MONTHLY SETUP PER ADD'L DEVICE (ONE-TIME FEE) | | 0.105 % | ☒ ASSESSMENTS | DISCOVER® |
| $ | ☐ TELETRAINING – PHYSICAL | | 0.010 % | ☒ MASTERCARD® DIGITAL ENABLEMENT FEE |
| $ | ☐ TELETRAINING – VIRTUAL | | 0.150 % | ☒ AMERICAN EXPRESS® NETWORK FEE |
| $ | ☐ WIRELESS SETUP | | 0.350 % | ☒ AMERICAN EXPRESS® NON – SWIPED / DIGITAL WALLET FEE |

**PLEASE NOTE:** The complete Merchant Agreement includes this application and the Terms and Conditions on the individual pages.



## TERMINAL HARDWARE / SOFTWARE

### TERMINAL / SOFTWARE TYPE (1)

| TYPE | | QUANTITY  1 |
|---|---|---|

PART CONDITION
☐ NEW    ☐ REFURBISHED    ☒ EXISTING

### TERMINAL APPLICATIONS (1)

☒ Retail    ☐ Supermarket    ☐ Hotel    ☐ AVS    ☐ Restaurant
☐ Server    ☐ Tips    ☐ Invoice #    ☐ MOTO (Card Not Present)
☐ Purchase Card    ☒ Auto Close

### TERMINAL PROGRAMS (1)

| VISANET ☒ TERM | PAYMENTECH ☐ TERM | ☐ HOST |
|---|---|---|

PROVIDER
☐ MERCHANT    ☐ ISO    ☐ SAGE

☐ AMEX / PIP (VisaNet/Paymentech + Amex software) (add'l paperwork required)
☐ CVV    ☐ Split Dial (VisaNet Only)
☐ NXT (Paymentech Only) (add'l paperwork required)

### PRINTER (1)

| TYPE | | QUANTITY |
|---|---|---|

PART CONDITION
☐ NEW    ☐ REFURBISHED    ☐ EXISTING
PROVIDER
☐ MERCHANT    ☐ ISO    ☐ SAGE

### PINPAD (1)

| TYPE | | QUANTITY |
|---|---|---|

PART CONDITION
☐ NEW    ☐ REFURBISHED    ☐ EXISTING
PROVIDER
☐ MERCHANT    ☐ ISO    ☐ SAGE

### TERMINAL / SOFTWARE TYPE (2)

| TYPE | | QUANTITY |
|---|---|---|

PART CONDITION
☐ NEW    ☐ REFURBISHED    ☐ EXISTING

### TERMINAL APPLICATIONS (2)

☐ Retail    ☐ Supermarket    ☐ Hotel    ☐ AVS    ☒ Restaurant
☐ Server    ☐ Tips    ☐ Invoice #    ☐ MOTO (Card Not Present)
☐ Purchase Card    ☐ Auto Close

### TERMINAL PROGRAMS (2)

| VISANET ☐ TERM | PAYMENTECH ☐ TERM | ☐ HOST |
|---|---|---|

PROVIDER
☐ MERCHANT    ☐ ISO    ☐ SAGE

☐ AMEX / PIP (VisaNet/Paymentech + Amex software) (add'l paperwork required)
☐ CVV    ☐ Split Dial (VisaNet Only)
☐ NXT (Paymentech Only) (add'l paperwork required)

### PRINTER (2)

| TYPE | | QUANTITY |
|---|---|---|

PART CONDITION
☐ NEW    ☐ REFURBISHED    ☐ EXISTING
PROVIDER
☐ MERCHANT    ☐ ISO    ☐ SAGE

### PINPAD (2)

| TYPE | | QUANTITY |
|---|---|---|

PART CONDITION
☐ NEW    ☐ REFURBISHED    ☐ EXISTING
PROVIDER
☒ MERCHANT    ☐ ISO    ☐ SAGE

## CERTIFICATION AND AGREEMENT

By signing below, the Merchant named  (1) certifies to Sage Payment Solutions that he/she is authorized to sign this Agreement; (2) certifies that all information and documents submitted in connection with this Application are true and complete  (3) authorizes Bank or its agent to verify any of the information given, including credit references, and to obtain credit reports (including a spouse if in a community property state); (4) has read, agreed to, and acknowledges receipt of the Terms and conditions of the Merchant Processing Agreement, attached hereto and incorporated herein by reference.  The Terms and conditions and the Application constitute the entire Integrated Merchant Processing Agreement by and between Merchant, Sage Payment Solutions and Bank; (5) agrees that Merchant and each transaction submitted to Bank will be bound by the Agreement in its entirety, and (6) agrees that Merchant will submit transactions to Bank only in accordance with the information in this Application and will immediately inform Sage Payment Solutions, in writing at the address above if any information in this Application changes.  This Agreement will become effective only when signed by Bank and Sage Payment Solutions.  Merchant further acknowledges that, as used in this paragraph, "Bank" means the banking institution identified at the top of the first page of this document/as the Settlement Bank.

By signing below, I represent that the information I have provided on this Application is complete and accurate and I authorize American Express Travel Related Services Company, Inc (American Express) to verify the information on this Application and to receive and exchange information about me including, requesting reports from consumer reporting agencies. If I ask American Express whether or not a consumer report was requested, American Express will tell me, and if American Express received a report, American Express will give me the name and address of the agency that furnished it. I understand that upon American Express' approval of the business entity indicated above to accept the American Express Card, the Terms and Conditions for American Express Card Acceptance (Terms and Conditions") will be sent to such business entity along with a Welcome Letter. By accepting the American Express card for the purchase of goods and/or services, you agree to be bound by the Terms and Conditions.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of this day, _____

### MERCHANT PRINCIPAL or CORPORATE OFFICER (1)

| SIGNATURE  X | PRINTED NAME | TITLE | DATE |
|---|---|---|---|

### MERCHANT PRINCIPAL or CORPORATE OFFICER (2)

| SIGNATURE  X | TITLE | DATE |
|---|---|---|

*SIGN HERE*

### SAGE PAYMENT SOLUTIONS

| SIGNATURE  X | PRINTED NAME | TITLE | DATE |
|---|---|---|---|

## PERSONAL GUARANTY

In consideration of Bank and Sage Payment Solutions' acceptance of the Agreement, the undersigned Guarantor (jointly and severally if more than one) unconditionally guarantees the performance of all obligations of Merchant to Bank and Sage Payment Solutions under the Agreement, and payment of all sums due thereunder, and in the event of default, hereby waives notice of default and agrees to indemnify Bank and Sage Payment Solutions for all funds due from Merchant pursuant to the terms of the Agreement. This is a guaranty of payment and performance and not of collection  and in no case will Sage Payment Solutions be required to attempt collection from Company or pursue any other remedy or action before collection from Guarantor. Guarantor waives any and all rights of subrogation  reimbursement or indemnity derived from Merchant and all other rights and defenses available to Guarantor under applicable law, including California Civil Code Sections 2787 to 2856, inclusive (or any similar surety ship laws), and further waives any and all rights, defenses or notices arising by reason of any modification or change in the terms of the Agreement whatsoever including, without limitation, the renewal, extension, acceleration, or other change in the time any payment or other performance thereunder is due, and / or any change in any interest or discount rate or fee thereunder  Guarantor confirms that Guarantor, collectively or individually, is an officer or a shareholder in the Merchant and party to the Agreement, and unconditionally and specifically authorizes Bank, or its authorized agent, to debit any overdue fees, costs, chargebacks, fines, penalties, expenses or obligations under the Agreement against any contractual relationship with Bank or Sage Payment Solutions from any personal checking account or other account owned or controlled by Guarantor, and further to report any default hereunder on Guarantor's personal Credit Bureau Report.  Guarantor agrees to pay all costs and expenses of whatever nature, including attorneys' fees and other legal **expenses,** incurred by or on behalf of Bank or Sage Payment Solutions in connection with the enforcement of this Guaranty. Guarantor further acknowledges that, as used in this paragraph, 'Bank' means the banking institution indicated by appropriate mark in one of the check boxes located at the top of the first page of this document.

### MERCHANT PRINCIPAL or CORPORATE OFFICER

| SIGNATURE  X | PRINTED NAME | TITLE | DATE |
|---|---|---|---|

### MERCHANT PRINCIPAL or CORPORATE OFFICER

| SIGNATURE  X | TITLE | DATE |
|---|---|---|

*SIGN HERE*

## SITE INSPECTION INFORMATION (to be completed by a Sage representative)

I have personally conducted a site inspection for this merchant, visually inspected the merchant's premises at a specified and reported the information in this merchant application as accurate and complete.

LOCATION TYPE
☐ RETAIL STORE    ☒ OFFICE    ☐ INDUSTRIAL    ☐ RESIDENCE    ☐ TRADE    ☐ OTHER.

MERCHANT
☐ OWNS  ☐ LEASE

### SALES REPRESENTATIVE

| SIGNATURE  X | PRINTED NAME | TITLE | DATE |
|---|---|---|---|

**PLEASE NOTE:** The complete Merchant Agreement includes this application and the Terms and Conditions on two (2) additional pages.

sage